UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LOUISE ALEXANDER,              ]
                               ]
      Plaintiff,               ]
                               ]
      vs.                      ]   2:10-CV-00536-LSC
                               ]
EDWARD E. MAY, et al.,         ]
                               ]
      Defendants.              ]

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration motions for summary judgment filed by the City of Bessemer, Alabama ("Bessemer") (Doc. 64), and Edward E. May ("May") and Charles Nevins ("Nevins") (Doc. 72).  Plaintiff Louise Alexander ("Alexander" or "Plaintiff") sued Bessemer, May, and Nevins (collectively, "Defendants") for unlawful deprivation of her Fourteenth Amendment rights under 42 U.S.C. § 1983 ("§ 1983"), and wrongful termination of utility services under Alabama law.  (Doc. 1.) Specifically, Alexander contends that Defendants had her electrical services disconnected in March 2010 in retaliation for Alexander's criticism of May and

announcement that she would run against May for the office of Mayor of the City of Bessemer. Defendants have moved for summary judgment on all of Plaintiff's claims. The issues raised in Defendants' motions have been briefed by both parties and are now ripe for review. Upon full consideration of the legal arguments and evidence presented by the parties, the motions for summary judgment will be granted in all respects.

II.   Facts.[1]

Edward May was elected Mayor of the City of Bessemer in 2002. Plaintiff Alexander served as a member of the Bessemer City Council from 1998 through 2010. From 2006 to 2010, Alexander and May "opposed each other vigorously" on a number of public issues. (Pl. Aff. ¶ 1.)[2]  When

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Defendants have moved to strike Plaintiff's affidavit. (Doc. 79.) The motion to strike is DENIED. To the extent Defendants argue that Plaintiff's testimony is irrelevant, lacking personal knowledge, speculative, makes a legal conclusion, or is otherwise improper, the Court has noted and considered these characterizations. The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process. Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, *see Macuba*

Alexander was indicted by the State of Alabama for alleged ethics charges, May testified for the State at Alexander's trial in February 2010. Ultimately, Alexander was found not guilty.

The City of Bessemer owns and operates Bessemer Utilities. May, the then-Mayor of Bessemer, served as the superintendent of Bessemer Utilities. Charles Nevins was the Operations Manager of Bessemer Utilities. Within weeks of Plaintiff's acquittal on the alleged ethics charges, the electrical services to her home and business were disconnected. Alexander contends that her electrical services were disconnected "for punitive reasons." (Doc. 74 ¶ 105.) She maintains that May wanted to punish her for criticizing him, prevailing in her criminal trial, and announcing that she intended to run for the office of Mayor of Bessemer. (*Id.*; Pl. Dep. at 40-45, 122.)

It is undisputed that the Bessemer City Code requires customers of Bessemer Utilities to be notified if their bill has not been paid, that a late charge has been added, and that service will be discontinued if the bill is

---

*v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by this Court when making its final decision on Defendant's summary judgment motions.

not paid.  The City Code also requires customers to be notified on how to apply for a hearing if the bill is disputed.  (Doc. 74 ¶ 36.)

In May 2008, Alexander complained that electrical service to her business had been shut off.  Plaintiff explained to Latricia Crusoe ("Crusoe"), the Business Office Supervisor of Bessemer Utilities, that her bills were not being delivered to the proper address.  According to Plaintiff, Crusoe applied credits to her home and business accounts, and Alexander paid the outstanding balances.  However, when the June bills arrived, they did not reflect the credits.  Alexander complained to May, and she contends he told her not to pay until the dispute was resolved.  (Pl. Aff. ¶ 7.)

In December 2008, Bessemer Utilities charged Alexander's residential account $275.30 for alleged meter tampering.  Plaintiff denied tampering with her meter and refused to pay the fee.

On February 16, 2009, Alexander met again with Crusoe and discussed the past due amounts on her accounts.  Her electrical service at her residence and business were terminated on or about March 11, 2009. Ultimately, her service was restored after she made payments on the accounts.

On May 26, 2009, the Utilities Committee of the Bessemer City Council discussed Alexander's disputes with her bills from Bessemer Utilities. In June 2009, the Utilities Committee met again and addressed Plaintiff's complaints. According to Councilman Jesse Matthews, it was decided that Alexander should continue to pay future accrued service charges as they fell due, but she would not pay past due amounts or late charges until the matter was resolved between Alexander and May. May was charged with reporting the results of his decision to the Utilities Committee at a later date. (Matthews Dep. at 10-12.) May never made a report to the Utilities Committee on his decision regarding Alexander's accounts. Per her agreement with the Utilities Committee, Plaintiff paid only the accrued service charges on her monthly bills.

Bessemer Utilities continued to provide electrical services to Alexander's residence and business until they were disconnected on March 9, 2010. Nevins testified that Alexander's electrical services were cut off in March 2010 because her accounts were delinquent and she had repeatedly failed to pay her bills "in full." (Nevins Dep. at 14; Nevins Aff. ¶ 32.) Nevins had no explanation why Alexander's accounts were able to remain

delinquent for nearly a year since the last disconnection. He testified that May never told him about any agreement reached with Alexander and the Utilities Committee in June 2009, and May never instructed him to disconnect Plaintiff's electrical services. (*Id*. at 14-15.)

III. Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23. In evaluating

---

[3]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Plaintiff argues that disconnection of her electrical services on March 9, 2010, violated her Fourteenth Amendment rights to due process because she was deprived of electrical services "without notice, and while her disputes concerning her accounts are awaiting a final decision." (Doc. 74.) Plaintiff also contends that Defendants' actions constitute the tort of

wrongful termination of utility services under Alabama law. (Doc. 1 at 7-9.) Defendants maintain that Plaintiff cannot seek relief for violation of her due process rights under § 1983 because state law provides an adequate remedy for her claims; the Court agrees.

"[A]t a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Defendants dispute that Plaintiff has a "property interest" in continued electrical service at her residence or business. However, for the purposes of this opinion, the Court assumes that she does.

Generally, a plaintiff "may invoke § 1983 regardless of any state-tort remedy that might be available to compensate [her] for the deprivation of" her rights under the Due Process Clause. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). However, when a § 1983 action is brought for an alleged violation of procedural due process, as this one is (Doc. 1 ¶ 5), "the existence of state remedies *is* relevant in a special sense." *Id.* (emphasis in original). "In procedural due process claims, the deprivation by state action

of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id*. (emphasis in original). "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id*. "This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id*.

Due process "is a flexible concept that varies with the particular situation." *Id*. at 127. The U.S. Supreme Court has determined in many instances that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Id*. (emphasis in original). "In some circumstances, however, the [Supreme] Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id*. at 128.

Because of the "uniquely final deprivation" involved with losing essential services such as electricity, water, and gas—even for a short period

of time—the U.S. Supreme Court has held that due process requires "notice reasonably calculated to apprise respondents of the availability of an administrative procedure to consider their complaint of erroneous billing," and "an opportunity to present their complaint to a designated employee empowered to review disputed bills and rectify the error." *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 20-22 (1978).

It is undisputed that Alexander received bills that showed outstanding amounts and stated her electrical service was subject to cutoff if the amounts were not paid by a certain date. Plaintiff complained about disputes with her electrical bills to May and the Business Office Supervisor of Bessemer Utilities. When matters were not resolved to her liking, she presented her disputes to the Utilities Committee. According to Plaintiff, she reached an agreement with the Utilities Committee and May that, pending a final decision on her complaints, her electrical services would continue if she paid only future accrued service charges as they fell due. Her lawsuit challenges the disconnection of her electrical services, without notice, while those disputes were pending with the Utilities Committee and May. (Doc. 74 at 21 ("The issue in this case is whether the Defendants'

March 9, 2010, disconnection of Plaintiff's electrical services without notice, and while her disputes concerning her accounts are awaiting a final decision, violates her due process rights . . . .").)

Plaintiff contends that Defendants intentionally disconnected her electrical services despite an agreement that they would not do so. (Doc. 74 at 22.) Alexander alleges: "Defendant May, with the participation of Defendant Nevins, caused Plaintiff's electrical services to be disconnected in March 2010 for punitive reasons and because Plaintiff had exercised her First Amendment rights to oppose and criticize Defendant May, and to run for the office of Mayor of the City of Bessemer." (*Id*. at 19-20 ¶ 105.) There is no admissible evidence indicating that May gave an instruction to disconnect Plaintiff's electrical services. However, even if the Court takes Plaintiff's allegations of wrongful conduct as true, the Court has to consider "whether predeprivation procedural safeguards could address the risk of deprivations of the kind" alleged by Alexander. *Zinermon*, 494 U.S. at 132. The answer is no.

In cases of negligent and intentional conduct by state employees, the U.S. Supreme Court has held that a postdeprivation remedy, such as a tort

remedy, is all a plaintiff is due. *See id.* at 128-30 (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984)). The Supreme Court explained: "The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." *Id.* at 130 (quoting *Hudson*, 468 U.S. at 533). Therefore, "an intentional deprivation of property does not give rise to a violation of the Due Process Clause if the state provides an adequate postdeprivation remedy." *Id.* at 533 n.14.

Defendants argue that an adequate state law remedy exists in a tort-law claim for wrongful termination of utility services. (Doc. 65 at 13.) Plaintiff does not seriously dispute the adequacy of the remedies provided by a state law claim for wrongful termination of utility services. She pleads the claim in the Complaint and acknowledges that the "Alabama Supreme Court has specifically recognized termination of electrical service as a tort affording the traditional remedies." (Doc. 1 ¶ 27 (citing *S. Pine Electric Coop. v. Burch*, 878 So. 2d 1120 (Ala. 2003)).) She seeks $250,000 in

compensatory damages and punitive damages of not less than $250,000; the same amounts sought in her § 1983 claim. (*Id.* ¶¶ 25, 27.)

Plaintiff half-heartedly argues that the tort-law claim for wrongful termination of utility services may not be adequate because it lacks a fee-shifting provision. (Doc. 74 at 22.) She quotes the U.S. Supreme Court's wording in *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 21 (1978), as follows: "Equitable remedies are particularly unsuited to the resolution of factual disputes typically involving sums of money too small to justify engaging counsel or bringing a lawsuit." (Doc. 74 at 22-23.) In that portion of *Memphis Light*, the Supreme Court addressed whether an injunction was an adequate substitute for a *pretermination* review of a disputed bill. The Court presumes the plaintiff intended to argue that because the tort-law claim for wrongful termination of utility services does not provide for attorney's fees, it may not be cost-effective for attorneys to take the case. Given the compensatory and punitive damages claimed in this case, the Court is not convinced. Moreover, in order to be an adequate postdeprivation remedy, "the state procedure need not provide all the relief available under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th

Cir. 2000). "Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Id*.

After full consideration, the Court concludes that the Alabama tort-law claim for wrongful termination of utility services is an adequate remedy to ensure Plaintiff was not deprived of her procedural due process rights. Because Plaintiff has not shown that state law remedies were inadequate to remedy the alleged deprivation(s) caused by Defendants' purported intentional conduct, she cannot establish a procedural due process violation and Defendants are entitled to summary judgment with regard to her § 1983 claim. *See Cotton*, 216 F.3d at 1333.

As stated previously, the Complaint includes a state law claim for wrongful termination of utility services. A district court may decline to exercise jurisdiction over state law causes of action if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because this Court has concluded that Defendants' motions for summary judgment are due to be granted with regard to Plaintiff's § 1983 claim, the Court declines to exercise jurisdiction over Plaintiff's state law claim.

V.    Conclusion.

For the reasons stated above, Defendants' motions for summary judgement will be granted in all respects.  A separate order will be entered.

Done this <u>29th</u> day of <u>August 2011</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297